Our second case is in re A.L. 410-0925. For the appellant it's Ms. McHurl. Ms. McHurl and Mr. Thomas, and for the applicant Ms. Shepard, you may proceed. May it please the court and opposing counsel. This morning we're here to appeal a termination of parental rights case. The standard of review to overturn the court's initial finding of termination is to reverse if that determination was against the manifest weight of the evidence. The first issue today is that the trial court's finding of the natural mother to be unfit for failing to make reasonable progress toward the return of the minor child A.L. in the nine month period following adjudication of neglect and dependency is against the manifest weight of the evidence. Reasonable progress has been found to be measurable or demonstrable progress toward the goal of reunification. And I believe it is clear in this situation that reasonable progress did occur and for whatever reason it was not taken into account. The mother, Alyssa, sought drug counseling during the first nine month period. She sought the counseling at the Well Center, an inpatient drug counseling facility, which was nearly 40 miles from her home. She paid for her own treatment at all points. She provided transportation to and from all of her counseling. She was recommended to undergo domestic violence counseling, random drug testing, and go to court appearances at all points. She was working at most a minimum wage job and at times no job at all. She was struggling financially and still transported herself for all of those and for visitation. The closest her random drug screenings were to her home was 15 miles. That's a 30 mile round trip for somebody who was admittedly having financial difficulties and transportation trouble. During the first nine month period, she did successfully complete drug counseling. She underwent domestic violence counseling and her counselor in the beginning was concerned that the mother admittedly had feelings for the minor's father. This was of concern because of the past issues of domestic violence between the two. At this point, though, she was not involved with the father and as of May 20, 2009, or the middle of the period, she acknowledged the domestic violence and the fact that their relationship was a negative factor in her life. This all shows that she was making progress. And in fact, the statute indicates that if services are available, then failure to follow DCFS service plans may indicate failure to make reasonable progress. In this situation, the services were essentially not available. She had difficulty transporting and with finances. And to have that much difficulty is tantamount to not providing the services at all. What should DCFS have done according to your position that they didn't do? They never offered any assistance with providing transportation to and from testing. They never looked to find a testing facility closer than 15 miles. They were aware of this issue and did not take any steps to... This is Skylar County. I mean, they're a pretty small place. What was available to DCFS that they didn't make available to your client? I believe, if nothing else, finances are available to DCFS to help defray the cost of transportation. Was your client a resident of Rushville? Yes. Case law has said that following a DCFS service plan to the letter or a court order is not necessary to make reasonable progress. The service plans are a means to an end, not the end themselves. But the end is that this child will be reunited in the near future with the child's parent and won't grow up in a series of foster homes. Foster parents do wonderful work, but that's not the safe, secure, permanent, loving residence that every child is entitled to. From the point of view of this record, what reason is there to believe that this child is soon going to be able to be reunited with your client and that she's going to be able to provide that home? I believe that during the second period as well, Ms. Mayfield underwent, again successfully, drug rehabilitation treatment. She underwent inpatient treatment and it was considered successful. She recognized that her living conditions, the area she was living in, she didn't have the support she needed. She recognized the problem and sought assistance, ultimately removing herself from the community she had been living in because she believed she needed more support than she was getting. And she thought by moving to the community her mother was residing in, she would be able to get that assistance. Which one was that? Where'd she move? She moved to St. Joseph, Missouri. It indicated, the trial court indicated that had our client mentioned the difficulties she was having with transportation and finances, those factors might be an excuse or at least a mitigating factor. And then went on to assert that Ms. Mayfield had never told anyone she was having difficulty. However, at different points her caseworkers had put in a letter to the court and in their reports that she reported financial difficulty. Ms. Mayfield also testified that she was struggling financially to be able to support herself and attend all of the recommended services. Unfortunately, if the court did not hear that argument, it appears that it's possible the court chose not to hear that argument. The second issue is that the trial court's finding the natural mother to be unfit for failing to make reasonable progress toward the return of the minor child in any nine month period following adjudication is against the manifest weight of the evidence. And during this second time period, as I referenced previously, Ms. Mayfield did relapse, but she also recognized that she needed further treatment. She sought out assistance at the Well Center, again inpatient treatment, which she completed successfully. She requested from her caseworker a referral to a methadone clinic in Springfield because she believed that would be her best opportunity for success and to make progress. That referral was not given to her because she had not made enough progress. It became somewhat of a catch-22. She hadn't made enough progress to be assisted and get the assistance she needed to make the progress successful. At one point during the second period, her counselor quit, terminated their employment at the Counseling Service Center, leaving her with no counselor for a period. And at this point, she was attending counseling. Yes, it was sporadically, but she was attending. She made an effort. And that effort cannot be ignored. She did make progress. You're using effort and progress at the same time. Effort is commendable, but the question here is progress. I believe she did make progress. She made progress in acknowledging her problems and seeking out further assistance. When she did not feel she was getting the assistance she needed, she ultimately made changes to get the assistance. In the spring of 2010, she admitted using heroin twice a day. That's far more than a relapse. That's an acceleration or an exacerbation of earlier problems she had with marijuana. One could argue that that progression was because she wasn't getting the help that she needed. But one can also argue that no matter what the reason, that shows a significant lack of progress over the almost by then 18-month period, or this is in the second nine-month period, I suppose. It's not realistic to think that a court is going to be giving a child back to anybody who's using heroin in the spring of the year that termination hearings are going on. I mean, that isn't going to happen. Do you agree? I agree. It did not happen in this case, yes. I believe one of the most indicative factors, one of the factors that is most indicative of the progress that Ms. Mayfield made is the fact that she removed herself from the community, knowing that she was not in a position to recover fully. She knew that she would be better served in an area where she had more support. She recognized the support and moved. And I believe she achieved a living condition where she was able to get the support that was not given to her during the court proceeding. When did she move? I believe she moved toward the end of the adjudication hearing. I believe she moved toward the time of the trial. The time of the termination. To say that Ms. Mayfield failed to make reasonable progress disregards the progress that she did make. Reasonable progress does have to account for the totality of the circumstances. And this is a young woman with, at best, a minimum wage job in rural west central Illinois with a debilitating disease. The steps she took, the progress she made was reasonable. She sought treatment. She successfully completed treatment. And at all times she paid for it herself, which is a testament to her dedication, I believe. Thank you. Thank you, counsel. May I please report, counsel? On the issue that Respondent Mother does raise, the state would rely on its arguments in the brief and also add that, as Justice Connick referred to, those arguments tend to blur the line between reasonable progress and reasonable failure. Reasonable effort and reasonable progress. Of course, the grounds we're talking about here are reasonable progress. And they also rely heavily on Respondent Mother's own testimony, which of course the trial court was not required to believe, especially when it was contrary to the state's witness' testimony. And on the common law record, of which the trial court only took judicial notice, there's prior orders, permanency reports, the records of drug tests that were ordered done by the state, that were done under court supervision. I believe in the brief Respondent Mother referred to a letter that she had written talking about her financial difficulties. That was not something that was before the court. And even if it was, her financial difficulties, as she admitted at the termination hearing, did not prevent her from buying the drugs that she used every day. And that drug use escalated from cannabis use, which was alleged that she admitted to in the neglect petition, to daily heroin use. The court also was not required to minimize the significance of Respondent Mother's repeated relapses, her escalation from daily cannabis use to daily heroin use. The fact that she lied and attempted to hide her problems from caseworkers, which refutes her argument that she sought out help but was failed by the system. The state would argue the record amply supports the trial court's own fitness finding, and Respondent Mother presents nothing which would warrant disturbing that judgment. What about the concerns that counsel raised about the lack of supportive services by DCFS? How should we view that? Well, the trial court found that there wasn't a lack, that in a rural situation, there's a limit, of course, to what kind of services are available. There's a limit to what kind of services can be applied, especially during these times. And the problem was not a lack of services, but rather Respondent Mother's failure to comply, take advantage of the services that were offered. When Respondent Mother talks about, or argues, difficulty in driving to make drug tests, that is aside from the fact that she admitted that she used drugs every day. And she went from cannabis use to heroin use. And, again, arguments about lack of money or not having the opportunity to take advantage of the services that were offered ignore her failure to comply and the trial court's finding, which is supported by the evidence that those services were offered. Now, of course, the state did make the argument about the lack of an explicit adjudication of neglect. And we're prepared to discuss that argument. The court didn't bring it up in talking with Respondent Mother's counsel. I would just mention that in preparing for this argument, I came across a couple of Supreme Court cases that referred to drug abuse as a problem. And I anticipated that perhaps the court would want to talk about this issue that the state raised and Respondent Mother did not address. And so I researched that issue in relation to those cases. And we would just say that those cases are outdated in light of later cases that talk about subject matter jurisdiction based on Belleville-Toyota. And those cases are being granted by the Illinois Constitution and invoked by the statute that creates the justiciable matter, which would be the JCA in this case. So the cases that talk about jurisdiction, court's jurisdiction to enter a dispositional order, would not defeat our argument on the lack of a specific adjudication of neglect. And I've got those cases. I can talk about them. I called the opposing counsel yesterday and notified them that I might be talking about that. But if the court has no interest, I'll just leave it at that. And just simply ask that you affirm the track record. Rebuttal? Ms. Murrell? I believe that the state is correct that the trial court is not required to minimize the relapses that Ms. Mayfield suffered. At the same time, the trial court must look at the evidence of her progress and should not minimize the progress that she did make. The trial judge was Judge McMillan? Yes, Your Honor. She's the resident circuit judge in Schuyler County? Yes, Your Honor. And additionally, I'd like to address one clarification. The letter I referenced was written by Ms. Mayfield's caseworker, not by Ms. Mayfield herself.